## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 10-10014-CIV-MOORE/SIMONTON

KEYS WI-FI, INC., a Florida corporation,

      Plaintiff,

vs.

CITY OF KEY WEST, a Florida municipal
corporation,

      Defendant.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff's Motion for Partial Summary

Judgment (ECF No. 33) and Defendant's Motion for Summary Judgment (ECF No. 37). These

motions are now fully briefed.

UPON CONSIDERATION of the Motions, the Responses, the Replies, the pertinent

portions of the record, and being otherwise fully advised in the premises, the Court enters the

following Order.

## I.    BACKGROUND[1]

Plaintiff, Keys Wi-Fi, Inc. ("Keys Wi-Fi") is a corporation that constructs wireless service

facilities such as telecommunications monopoles.[2] Defendant City of Key West ("the City") is

an approximately six square mile island located at the southernmost end of the Florida Keys.

---

[1] The facts of this case are undisputed except where noted.

[2] A telecommunications monopole is a structure that contains cellular antennas, and
provides wireless services to the surrounding area.

Keys Wi-Fi brings this suit alleging that the City improperly denied Keys Wi-Fi a height variance that would allow it to build a 145-foot high telecommunications monopole. Keys Wi-Fi alleged that, in doing so, the City violated the Federal Telecommunications Act ("FTA"), 47 U.S.C. § 332(c)(7)(B), Key Wi-Fi's right to Equal Protection under the Constitution, and Florida state law.

### A.    Conditional Use Permit

Keys Wi-Fi seeks to build its monopole at 2832 North Roosevelt Boulevard. Its monopole would allow multiple wireless providers to collocate their antennas at the same place. Use of a monopole is considered a "conditional use" under the City's municipal code. See Key West, Fla., Code §§ 86-9, 122-418(6). Thus, such usage requires a conditional use permit. On June 1, 2009, Keys Wi-Fi submitted an application for a conditional use permit, and submitted additional materials on October 19, 2009. On November 19, 2009, this application came before the Key West Planning Board. The Planning Board passed Resolution 2009-048, which approved the conditional use subject to approval of a height variance from the Key West Board of Adjustment ("BOA").

### B.    Height Variance Application

The height variance was required because the area in which Keys Wi-Fi's monopole would be located has a 40-foot zoning height restriction. The monopole would be 145 feet high. The BOA may authorize a variance from maximum height requirements where the following requirements are met: (1) there must exist special conditions, (2) the special conditions must not be created by the applicant, (3) special privileges must not be conferred, (4) hardship conditions must exist, (5) only the minimum possible variance must be granted, (6) the variance must not be

injurious to the public welfare, and (7) the existing nonconforming uses of other property must not be the basis of approval. See Key West, Fla., Code § 90-395. The Party requesting the variance has the burden of showing each one of the requirements are met, and the failure to meet any of the requirements is grounds for denying the application. Id. Additionally, the party seeking the variance must comply with a "good neighbor policy" by contacting all impacted property owners and attempting to address their concerns. Id.

On June 1, 2009, Keys Wi-Fi filed its variance application with the City. The application was considered at a BOA meeting held on December 15, 2009.

C.      BOA Hearing

At the start of the hearing, the City Clerk presented two petitions against the height variance signed by a collective total of 93 individuals. Also presented were emails sent to the City's Commissioners in favor of, and against, the variance. Keys Wi-Fi presented several witnesses, including Rick Richter ("Richter"), President of Keys Wi-Fi. Richter stated that the purpose of the monopole was to provide optimal service and maximum benefit to all carriers licensed to provide cellular service in the City. Keys Wi-Fi's application materials indicated that the monopole would have the capacity to provide five or six licensed cellular carriers with coverage, in addition to providing service to additional wireless products such as FM Radio, wi-max[3], and pagers. Richter presented a letter from Sprint/Nextel, one of the carriers, stating that a 100 foot monopole would be sufficient to cure the City's coverage gap. Richter concedes that he currently typically has cellular coverage while in the area that the monopole would cover.

---

[3] Wi-max is a technology that transmits wireless data at broadband speeds.

Another witness for Keys Wi-Fi, representing a division of Verizon Wireless, another carrier, testified that a 145-foot monopole was necessary to support six carriers but that a 120-foot monopole would be sufficient for Verizon itself.   An engineer from AT&T Mobile, another carrier, expressed the view that 145-feet was the optimum height for the monopole.  Keys Wi-Fi suggests that, by this, the engineer meant "minimum height."  Three local individuals also spoke in support of the variance.

Speaking against the variance, Planning Director Amy Kimball-Murley ("Kimball-Murley") recommended that it be denied.  Among her reasons was that Keys Wi-Fi was unable to establish that § 90-395(5), requiring that applicant only seek the minimum variance necessary, was met.  She noted that Keys Wi-Fi was attempting to optimize and maximize the monopole they were able to build, while a shorter monopole could fully accommodate some of the carriers.  Kimball-Murley opined that several other § 90-395 factors were not met for various reasons.  Several individuals spoke on behalf of residents who did not want the monopole built.  Evidence was entered suggesting AT&T was separately applying to have an antenna constructed that would be only 80 feet high, though that other site "most likely" would not completely meet AT&T's needs.  At the conclusion of the hearing, Keys Wi-Fi's application for a variance was denied.

D.    Denial Resolution

On January 12, 2010, the BOA issued a written denial of the application in Resolution No. 90-339.  The resolution went through the § 90-395 factors and, with little analysis, found the application not to meet factors one through five.

E.    Non-Party Variance Applications

The City presented evidence that several height variance applications for towers that would provide cellular service were accepted, while several others were denied, depending on the circumstances and locations identified in the particular application.

F.    The Present Action

On February 10, 2010, Keys Wi-Fi filed this suit alleging that the City (1) violated FTA, 47 U.S.C. § 332(c)(7)(B)(iii), because the resolution denying the variance was not "in writing" (Count I); (2) violated FTA, 47 U.S.C. § 332(c)(7)(B)(iii), because the denial was not supported by "substantial evidence" in a written record (Count II); (3) violated FTA, 47 U.S.C. § 332(c)(7)(B)(i)(II), because the provision had the effect of prohibiting personal wireless services (Count III); (4) violated FTA, 47 U.S.C. § 332(c)(7)(B)(i)(I), by discriminating between providers (Count IV); (5) violated 42 U.S.C. §§ 1983 and 1988 because the City unequally applied their laws (Count V); (6) violated § 365.172, Florida Statutes, by failing to act on the variance in a timely fashion (Count VI); and (7) violated § 365.172, Florida Statutes, by failing to cooperate with Keys Wi-Fi in determining an appropriate location for the monopole (Count VII).

Keys Wi-Fi now seeks summary judgment on Counts I, II, III, VI and VIII. The City seeks summary judgment on all claims.

**II.    STANDARD OF REVIEW**

The applicable standard for reviewing a summary judgment motion is stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show

5

> that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III.   FTA CLAIMS (Counts I, II, III, & IV)

The FTA is "a deliberate compromise between two competing aims-to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." Telespectrum v. Pub. Serv. Comm'n, 227 F.3d 414, 423 (6th Cir. 2000)

A.     Writing Requirement (Count I)

Keys Wi-Fi alleges that the City did not meet the FTA's writing requirement by passing Resolution No. 90-339. Under the FTA, a city's decisions to deny a carrier's application must be "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The FTA does not define "writing." Circuits have applied different levels of scrutiny to this requirement. See New Par v. City of Saginaw, 301 F.3d 390, 395-96 (6th Cir. 2002) (comparing standards). The Eleventh Circuit has yet to decide this issue.

This Court easily rejects the most stringent test, which requires something close to formal findings of fact. See Smart SMR of N.Y., Inc. v. The Zoning Comm'n of the Town of Stratford, 995 F. Supp. 52, 56 (D. Conn. 1998). Such a strict standard is nowhere in the FTA, and reading one into the statute would place a heavy burden on local boards. Further, as the First Circuit has noted:

> Passage of the TCA did not alter the reality that the local boards that administer the zoning laws are primarily staffed by laypeople. Though their decisions are now subject to review under the TCA, it is not realistic to expect highly detailed findings of fact and conclusions of law. In the absence of an express congressional directive, therefore, we find no basis for inflating "[t]he simple requirement of a 'decision ... in writing' . . . into a requirement of a 'statement of . . . findings and conclusions, and the reasons or basis thereof.

Sw. Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 59-60 (1st Cir. 2001). The Court thus adopts the First Circuit's approach, which is summarized as requiring that

> written denial must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons. We stress, however, that a meaningful review of the decision is not limited, as [Plaintiff] would have it, only to the facts specifically offered in the written decision. Again, such a requirement would place an unjustified premium on the ability of a lay board to write a decision.

Id. at 60.

7

Here, the BOA Resolution notified Keys Wi-Fi in writing of the § 90-395 prongs it failed to meet and, thus, of the reasons for the application's denial. This Resolution can be meaningfully reviewed when viewed with evidence in the record. The BOA Resolution was, as Keys Wi-Fi suggests, largely devoid of any analysis as to what facts in the record it was relying on. However, such details, while useful, are not required by the FTA. Thus, the FTA writing requirement is satisfied and this claim is dismissed.

B.     Substantial Evidence (Count II)

Keys Wi-Fi argues that the City did not base its denial of Keys Wi-Fi's application on substantial evidence, thus violating the FTA. Under the FTA, a local board's decision to deny a request to construct a monopole must be supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(b)(iii). This is a "procedural safeguard[,] which is centrally directed at whether the local zoning authority's decision is consistent with the applicable local zoning requirements." Omnipoint Comm'ns MB Operations, LLC v. Town of Lincoln, 107 F. Supp. 2d 108, 115 (D. Mass. 2000) (internal citations omitted); see also Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Tp., 181 F.3d 403, 408 (3d Cir. 1999) ("The substantial evidence test applies to the locality's own zoning requirements."). The Court is required to give the Board the "'benefit of the doubt, since it requires not the degree of evidence which satisfies the court that the requisite fact exists, but merely the degree that could satisfy a reasonable fact finder.'" T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1345 (M.D. Fla. 2008) (quoting Penobscot Air. Servs. v. FAA, 164 F.3d 713, 718 (1st Cir. 1999)). "Review under this standard is essentially deferential, such that courts may neither engage in their own fact-finding nor supplant a local zoning entity's reasonable determinations." Id.

8

Here, the City relied on substantial evidence suggesting that Keys Wi-Fi was ineligible for a height variance. If the application failed to meet any of the § 90-395 criteria, there was a basis to deny the application. See U.S. Cellular Corp. v. City of Wichita Falls, Tex., 364 F.3d 250, 259 (5th Cir. 2004) (holding that the TCA "requires only that the adverse action be supported by substantial evidence, not that each individual reason for the adverse action be supported by substantial evidence"). Key West's Local Code provides that "the variance granted is the minimum variance that will make possible the reasonable use of the land, building or structure." Key West, Fla., Code § 90-395(5). Applying this provision, the BOA interpreted "reasonable use" of Keys Wi-Fi's property to mean use sufficient to provide service to only one carrier. BOA's conclusion that a lower than requested variance was the minimum variance necessary is thus well supported by evidence in the record. The evidence suggesting that one monopole could be adequate for an individual carrier includes letters and statements from carriers that a lower variance would be adequate for their individual needs. Keys Wi-Fi does not contest this evidence. Rather, its main argument in rebuttal is that the "minimum variance" necessary to provide "reasonable use" of the property was the height necessary for multiple carriers to receive adequate service. A reasonable fact finder could decide that use of a monopole that was capable of adequately supplying only one telecommunications carrier constituted a "reasonable use" of a property.[4] Thus, because substantial evidence supported the

---

[4] For example, no evidence has been presented that it would be economically infeasible to have a monopole supplying just one carrier, and evidence in the record suggests that other such single towers have been built, indicating they are not economically infeasible.

BOA's conclusion that Keys Wi-Fi does not meet § 90-395(5), Keys Wi-Fi's claim pursuant to

the substantial evidence requirement in 47 U.S.C. § 332(c)(7)(b)(iii) is dismissed.[5]

### C.    Absolute Prohibition (Count III)

Keys Wi-Fi argues that the City's denial amounted to an absolute prohibition, in violation

of the FTA.  47 U.S.C. § 332(c)(7)(B)(i)(II) requires that the Board's regulation of wireless

services "shall not prohibit or have the effect of prohibiting the provision of personal wireless

services."  This refers to blanket, and not individual, prohibitions.  AT&T Wireless PCS, Inc. v.

City Council of City of Va. Beach, 155 F.3d 423, 428 (4th Cir. 1998).  Here, no blanket

prohibition has been shown, given that it is undisputed that the City has approved numerous

other conditional uses and variances for cell towers.  This suggests that the denial of the variance

was because of the unreasonableness of Keys Wi-Fi's request rather than a desire to ban all cell

towers.[6]

An "absolute prohibition" within the meaning of the FTA can also occur in situations

where there exists a "significant gap" in wireless service coverage, and there exist no feasible

alternative site locations.  MetroPCS, Inc. v. City & County of San Francisco, 400 F.3d 715, 730

(9th Cir. 2005).  Here, Keys Wi-Fi cannot meet either prong.  Evidence in the record suggesting

that a "significant gap" in wireless service exists in the City is largely anecdotal and conflicts

---

[5] This Court need not address the remaining § 90-395 prongs, as substantial evidence of any individual prong is sufficient to show the City's decision did not violate the TCA.

[6] Indeed, Keys Wi-Fi itself was given a conditional use permit to construct its Monopole and only the height request for a 105-foot variance above the 40-foot limitation otherwise allowed was denied.  Keys Wi-Fi never sought a lesser variance, and so it is unknowable whether such a request would have been rejected.

with other evidence in the record.[7]  Moreover, Keys Wi-Fi's briefs only point to evidence with regards to the service quality of three carriers: AT&T, Sprint, and Verizon.  Thus, even if Keys Wi-Fi proved that these three carriers had a significant service gap, this would not require the City to approve a monopole such that it could support six carriers, as the Court cannot simply assume that the other unnamed carriers suffer similar gaps in service.[8]

Keys Wi-Fi has also not met the second prong.  Given that numerous other permits have been granted in the past, it is at least plausible that permits for additional locations will be granted.[9]  In fact, evidence before the Board suggested that one carrier was pursuing another permit even while this request was pending, suggesting that placement of additional cellular towers elsewhere is feasible.  The mere fact that additional towers may not be individually as effective as collocating all of the carriers antennas on one monopole does not transform the denial into an absolute prohibition.  In sum, the evidence before this Court suggests that no absolute prohibition against cell towers or variances exists in the City and, thus, the City is entitled to summary judgment on this claim.

---

[7] For example, Keys Wi-Fi's president admitted that he has had no reception problems on his own phone in the area where the alleged gap exists.

[8]  The Court has no evidence of how tall a monopole would be required to service just these three carriers.  However, all of the carriers have stated that either they individually need less than a 145-foot monopole, or that they have other applications pending to build radio towers that would help address their gap in service.

[9]  Keys Wi-Fi suggests that these past approvals should be afforded little weight because there has been a change in leadership with Kimball-Murley becoming planning director.  Keys Wi-Fi bases this argument on deposition testimony of Brendon Cunningham ("Cunningham"), a Senior Planner II.  Cunningham testified, however, that variance application decisions are made based on the § 90-395 criteria, and that such applications were treated the same under Kimball-Murley as before her tenure.  See Cunningham Dep. (ECF No. 47-1), at 75.

### D.   Unequal Application (Count IV)

Keys Wi-Fi argues that the City has applied its height variance application standards unequally.  47 U.S.C. § 332(c)(7)(B)(i)(I) prohibits "unreasonably discriminat[ing] among providers of functionally equivalent services."  "[A]lmost all federal courts considering such cases have ruled that providers alleging unreasonable discrimination must show that they have been treated differently from other providers whose facilities are 'similarly situated' in terms of the 'structure, placement or cumulative impact' as the facilities in question."  MetroPCS, 400 F.3d at 727 (citations omitted).  Here, Keys Wi-Fi has provided insufficient evidence as to "structure, placement or cumulative impact" of the allegedly similarly situated structures.[10]  Thus, insufficient information exists for a fact finder to determine that permits were approved for similarly situated buildings. In any event, even from the limited record available as to other variance applications, none are similarly situated. Keys Wi-Fi points to a number of variance requests that involved lesser variance requests,[11] as well as antennas that were placed upon existing structures that did not add to the height of existing structures.  None of these examples are similarly situated to the proposed monopole.  Therefore, the City is entitled to summary judgment as to this claim.

---

[10] Keys Wi-Fi suggests that it is the City's burden to show no other entity had a similarly situated application approved.  In support of its Motion, the City has pointed to the absence of any application involving a similarly situated location, and thus the burden is on Keys Wi-Fi to point to some evidence of a similarly situated company.

[11] The one height variance discussed in Keys Wi-Fi's brief that the BOA granted for a taller structure did not involve the collocation of multiple carriers.  This distinction alone justifies the different outcome.  In any event, no analysis of the surrounding area of this structure is made, and so this Court cannot meaningfully analyze whether the structures are similarly situated.

**IV.     EQUAL PROTECTION (Count V)**

Keys Wi-Fi argues that the City has applied its height variance application standards in a manner inconsistent with Keys Wi-Fi's Equal Protection rights.  Similar to unequal application claims under the TCA, a plaintiff cannot show an equal protection violation where "two applicants are not similarly situated."  E & T Realty v. Strickland, 830 F.2d 1107 (11th Cir. 1987).  Here, as discussed above, Keys Wi-Fi has not pointed to any similarly situated company. Therefore, the City is entitled to summary judgment on this claim.

**V.      STATE CLAIMS (Counts VI & VII)**

Keys Wi-Fi claims that the City violated § 365.172, Florida Statutes, by failing to act on the variance in a timely fashion, and violated § 365.172, Florida Statutes, by failing to cooperate with Keys Wi-Fi in determining an appropriate location for the monopole.  The only claimed basis for bringing these claims in this Court is under supplemental jurisdiction.  "In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  However, "[t]he district courts may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(b)(3).  Here, this Court declines to exercise supplemental jurisdiction over the Florida state law claims.  In declining to exercise jurisdiction, this Court notes that Keys Wi-Fi has a Petition for a Writ of Certiorari including identical state claims that is pending before the Florida Circuit Court.  Thus, principles of comity and federalism suggest allowing the state court to address these issues.

**VI.     CONCLUSION**

For the foregoing reasons, it is,

ORDERED AND ADJUDGED that Plaintiff's Motion for Partial Summary Judgment (ECF No. 33) is DENIED.  Plaintiff's Request for Hearing (ECF No. 32) is DENIED AS MOOT. It is further,

ORDERED AND ADJUDGED that  Defendant's Motion for Summary Judgment (ECF No. 37). is GRANTED IN PART.  Counts I-V are DISMISSED WITH PREJUDICE.  Counts VI-VII are DISMISSED WITHOUT PREJUDICE.  All other pending motions not otherwise ruled upon are DENIED AS MOOT.  The Clerk of the Court is instructed to CLOSE this case.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>28th</u> day of September, 2010.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All counsel of record